ALBERT H. HAYNES, Defendant in Error, v. RICHARD H. CHRISTIAN and DAVID ROBERTS, Plaintiffs in Error.

Kansas City Court of Appeals, April 5, 1888.

1. PRACTICE—EVIDENCE—RULES GOVERNING THE PRODUCTION OF—RELEVANCY.—The evidence offered must correspond with the allegations and be confined to the point in issue. But under the head of relevancy, the question is, not whether the evidence offered be the most convincing, but whether it tends at all to illustrate the question. The rule confining evidence to the point in issue excludes all evidence of collateral facts, or those which are incapable of affording any reasonable presumption or inference as to the principal fact or matter in dispute. But evidence of collateral facts has always been admitted in cases in which the knowledge or intent of the party was a material fact, on which the evidence, apparently collateral and foreign to the main subject, had a direct bearing, as falling within the rule instead of being exceptions to it.

2. ———— ———— FRAUDULENT ALTERATION—CASE ADJUDGED.—Where there are strong circumstances to suspect a note has been fraudulently altered, general corroborating circumstances may be admitted in evidence to strengthen the suspicion, as that other notes, drawn and indorsed by the same parties, to take up one of which the note in question had been given, had been altered. But to maintain the introduction of such collateral facts, they must be in some way capable of being brought into a common system with that under trial. *Held*, that the rule as to admission of collateral facts is applicable to the evidence offered in this case.

ERROR to DeKalb Circuit Court, HON. JOSEPH P. GRUBB, Judge.

*Reversed and remanded.*

The case and facts are stated in the opinion of the court.

J. F. HARWOOD and RAMEY & BROWN, for the plaintiffs in error.

I. There being no evidence that defendant Roberts

executed the notes sued on, other than that he signed them "with his own hand," the court erred in instructing the jury that they might find against him if they believed he authorized some other persons to sign it for him. It was error to give an instruction not predicated upon the evidence. *Skyles v. Bollman*, 85 Mo. 35 ; *Type Foundry v. Printing Co.*, 3 Mo. App. 142, 150 ; *Bank v. Overall*, 16 Mo. App. 510. And this error is not cured by the giving of a proper instruction on that point for the defendants. If the jury considers them both, their verdict will be simply guess-work. *Fredericks v. Allgaier*, 88 Mo. 598 ; *Singer Co. v. Hudson*, 4 Mo. App. 145 ; *State v. Laune*, 1 Mo. App. 371.

II. It is erroneous to give inconsistent instructions. *Henschen v. O'Bannon*, 56 Mo. 280 ; *Price v. Railroad*, 77 Mo. 508 ; *Stevenson v. Hancock*, 72 Mo. 612 ; *Lampert v. Gas Co.*, 12 Mo. App. 576 ; *Goetz v. Railroad*, 50 Mo. 472. So far from correcting the evils of either, the contradiction multiplies them in both. *State v. Nauert*, 2 Mo. App. 295. The error in this case was particularly vicious, on account of the introduction of the letter claimed to have been written by Christian. This pretended letter purported to acknowledge the execution of the notes sued on, by Roberts as well as the writer. As this was the only item of evidence in the case to which the instruction complained of could, by any stretch of the imagination, be applied, it not only presented an issue not in the evidence, but also carried with it the hint that the pretended letter was in some way evidence against Roberts.

III. The plaintiff, having introduced a letter purporting to have been signed by Christian, acknowledging the execution of the notes sued on, and evidence having been introduced by defendants tending to prove the letter a forgery, the plaintiff ought not to have been permitted to break the force of a comparison of the signature upon this letter with Christian's signature upon the notes by proving that Christian signed his

name "different ways." The question before the jury was as to whether or not he signed it in the "ways" in which it appeared upon the papers in evidence.

IV. The notes in suit, and those offered in evidence by defendants, purport to have been signed by the same person, are made payable to the same person, and had never passed out of his hands until the day suit was brought on them. If the notes were forged, as claimed by defendants, the making and presentation of them constitute a single fact, done for the purpose of defrauding the defendants out of the aggregate sum expressed in them. The test of admissibility is, "whether the circumstances offered in proof were contemporaneous with the main fact under consideration, and whether they were so connected with it as to illustrate its character." 1 Greenlf. on Evid., sec. 108.

CASTEEL & HAYNES, for the defendant in error.

I. There was evidence upon which to predicate instruction number one, given for plaintiff. Any evidence tending to show that defendant Roberts admitted the indebtedness, or that he would pay the notes off if plaintiff would put no more costs, on them, would authorize that part of the instruction to which defendants object, viz., "or caused to be signed their names to the notes in controversy." *Ridens v. Ridens*, 29 Mo. 470. Where there is any evidence tending to prove an issue made by the pleadings, a party is entitled to have it passed on by a jury under proper instructions. *McFarland v. Bellows*, 49 Mo. 311; *Claflin v. Rosenberg*, 42 Mo. 439; *Bowen v. Lazalere*, 44 Mo. 383; *Beauchamp v. Higgins*, 20 Mo. App. 514; *Henry v. Hines*, 18 Mo. App. 497. Then it follows that if instruction number one, given for plaintiff, was proper, defendant Roberts cannot be heard to complain that instruction number one, given at his instance, conflicts with the one given for plaintiff, when such conflict constitutes an error in his own favor. *Alexander v. Clark*, 83 Mo. 482; *Musser v. Adler*, 86 Mo. 445.

II.  There was no error in permitting Buck to testify that Christian signed his name in different ways, especially in view of the fact that the affidavit denying his signature to the notes in controversy, and admitted to be Christian's signature, was signed by R. H. C. Christian.  It did not tend to break the force of a comparison of the signature upon the letter introduced, with his name signed to the affidavit and his name signed to the notes in controversy.  It only went, in fact, to the number of initial letters he used in signing his name, and Buck's testimony was, that he signed it in both ways, or in "different ways."

III.  That the court did not err in refusing to permit the defendants to produce in evidence for comparison, or for the purpose of showing that they were forgeries, other notes purporting to have been given to plaintiff by defendants, seems to be the well-settled law of this state.  *State v. Clinton*, 67 Mo. 380. Comparison of handwriting is only admissible when other writings in evidence in the case on trial are conceded to be genuine ; then such writings may be used as standards of comparison, and the comparison may be made by the jury, with or without the aid of experts.  Then such papers can only be used when no collateral issue can be raised concerning them.  1 Greenl. on Evid., sec. 581 ; *State v. Clinton*, 67 Mo. 380; *Rose v. Bank*, 91 Mo. 399, and cases cited.  The admission of the notes in evidence, and permitting defendants to prove that their signatures to them were forgeries, would have raised an issue collateral to that raised by the pleadings in this case, and would have been improper.

RAMEY & BROWN and HARWOOD, in reply.

The brief of defendant in error admits that the contradictory instructions given in this case constitute reversible errror, unless it is affirmatively shown by the record that the error was in the instruction for defendants.  No one will doubt that this statement of the law

is as favorable for plaintiff as it can be made. In order to make that view of the law avail plaintiff to sustain this judgment upon the record before us, this court must hold that had the plaintiff sworn upon the trial that defendant Roberts signed the note in his presence, and immediately handed it to him, and afterwards came to him and acknowledged that he owed the amount stated in the face of the note, it would have been error for the court to have instructed the jury to find for the defendant Roberts, unless they believed he signed it himself, as stated by plaintiff. The cases cited in plaintiff's brief have no bearing upon the point made as to the rejection of the other forged notes.

HALL, J.—This was a suit begun before a justice of the peace on three promissory notes, purporting to have been executed by the defendants, and payable to plaintiff. The defence, was *non est factum*. The case was taken by appeal to the circuit court from a judgment by the justice of the peace in favor of the defendants. The defendants introduced evidence tending to show that the notes in suit were forgeries. The bill of exceptions then recites: "Defendants then produced the transcripts of three other suits now pending in the DeKalb circuit court on appeal from W. M. Stigall, the same justice of the peace before whom this suit was instituted and tried, all of which suits were instituted on the same day on which this suit was instituted before said justice, in each of which said suits this plaintiff was the plaintiff and these defendants were defendants. In one of said suits plaintiff sued on a note dated June 25, 1885, for one hundred and forty dollars, payable six months after date, purporting to be signed by one C. W. Christian, together with these defendants, which said note was attached to said transcript. In another of said suits plaintiff sued on one note dated August 19, 1885, for twenty dollars, due on or before February 19, 1886, purporting to be signed by these defendants ; also one note dated July 28, 1885, due seven months

after date, for thirty dollars, purporting to be signed by these defendants : one note, dated June 1, 1885, for twenty-two dollars, due eight months after date, purporting to be signed by these defendants. In another of said suits plaintiff sued on one note, dated March 2, 1885, for sixteen dollars, due ten months after date, purporting to be signed by one C. W. Christian, together with these defendants ; also one note dated September 8, 1885, due on or before September 12, 1885, for seventeen dollars, purporting to be signed by one C. W. Christian, together with these defendants, all of which said notes above described, were, on the face thereof, payable to this plaintiff.

"The defendants thereupon offered to prove, by legal and competent evidence then and there produced and offered by them, that neither of the notes above described, excepting said note for one hundred and forty dollars, was signed or executed by them, or either of them, or by any other person for them, or either of them ; that said note for one hundred and forty dollars had, since its execution and delivery by defendants, been falsely and fraudulently raised from forty dollars to one hundred and forty dollars ; and that said notes, and each of them, were false and forged, to which evidence so offered the plaintiff objected, upon the ground that such evidence was incompetent, and did not tend to prove the issue tendered by defendants herein ; which said objection was by the court sustained and said evidence excluded, to which action of the court in so sustaining plaintiff's said objection, and refusing to permit defendants to prove said facts, the defendants at the time excepted."

The question is, was the evidence offered by the defendants and rejected by the court admissible ?

The rule stated by Mr. Greenleaf, in his work on Evidence, as the "first rule, governing in the production of evidence," is, "that the evidence offered must correspond with the allegations and be confined to the point in issue." 1 Greenl. Evid., sec. 51. "It is not

necessary, however, that the evidence should bear *directly* on the issue." *Id.* sec., 51a. ". It should also be remembered that, under the head of relevancy, the question is, not whether the evidence offered be the most convincing; but whether it tends at all to illustrate the question." *Holt v. Crume*, Litt. Sel. Cas. 499, 500; Phillips on Evid. [Cowan & Hills' and Edwards' notes], 739. The rule confining the evidence to the points in issue "excludes all evidence of *collateral facts*, or those which are incapable of affording any reasonable presumption or inference, as to the principal fact or matter in dispute; and the reason is, that such evidence tends to draw away the minds of the jurors from the point in issue, and so excite prejudice and mislead them; and, moreover, the adverse party having had no notice of such a course of evidence, is not prepared to rebut it." 1 Greenl. on Evid., sec. 52. In determining what presumptions are too remote to admit of any reasonable direction to a jury in regard to the issue which they have to try, a very nice exercise of discretion often devolves upon the judge.

Evidence of collateral facts has always been admitted in cases, in which the *knowledge* or *intent* of the party was a material fact, on which the evidence, apparently collateral, and foreign to the main subject, had a direct bearing. 1 Greenl. on Evid., sec. 53; 1 Phillips on Evid., 732, 774, and notes, and cases cited therein; *State v. Meyers*, 83 Mo. 558. Cases of this kind are said to fall strictly within the rule, instead of being exceptions to it. 1 Greenl. on Evid., *supra; Wood v. United States*, 16 Pet. 360. "Thus, in a prosecution for uttering a bank-note, bill, or promissory note, with knowledge of its being forged, proof that the prisoner had uttered other forged notes or bills, whether of the same kind or of a different kind, or that he had other forged notes or bills in his possession, is clearly admissible, as showing that he knew the note or bill in question to be forged." 1 Phillips on Evid. 769; *State v. Mix*, 15 Mo. 160. But "where a party defends an

action on a bill of exchange, on the ground that his acceptance has been forged, it is not admissible evidence that the party who negotiated such bill had been guilty of other forgeries." Chitty on Bills, 661. And when forgery of a signature is alleged as a defence to a suit on a promissory note " it will not be competent to prove that the party charged to be guilty has committed a forgery of a similar character, and absconded on that account." 2 Daniel on Neg. Inst., sec. 1350 ; *Dow's Ex'r v. Shenny's Ex'r*, 29 Mo. 390. And "so in an action against the acceptor of a bill of exchange, where the defence was, that the acceptance was a forgery, evidence offered on the part of the defendant that a collection of bills, bearing his forged signature, had been in plaintiff's possession, and that some of such bills had been circulated by him, was held to be inadmissible, without distinct proof that the bill in suit had formed part of the collection." · 1 Phillips on Evid. 750 ; *Griffiths v. Payne*, 11 A. & E. 131. But it has been held that where there are strong circumstances to suspect a note has been fraudulently altered, general corroborating circumstances may be admitted in evidence to strengthen the suspicion ; as that other notes drawn and indorsed by the same parties, to take up one of which the note in question was given, had been altered. *Ranken v. Blackwell*, 2 Johns. Cas. 198.

The case of *Tyler v. Todd*, 36 Conn. 218, was a suit against the defendant as endorser of a promissory note. The defence was, that the endorsement was a forgery. The defendant claimed that his name had been forged to a large number of notes, amounting in the aggregate to a large sum, and that the note in suit was one of them. Francis Warner, a witness introduced by the plaintiff, testified that he received the note in suit from Richard Platt, the maker, that he sold it to Eneas Warner, from whom it was found that the plaintiff had received it, and that it was signed by R. Platt. The evidence, which was held to have been properly

admitted on the part of the defendant, so far as it bears on the question in the present case, will appear from the following quotation from the opinion in that case : "The defendant was asked how many notices of protests of R. Platt's notes from banks he had received in the last few months. He replied 'forty-eight,' and stated the amount of the notes, etc. This testimony, by itself, was not important; but in connection with the fact previously sworn to, that he had signed but one of the notes protested, tended to prove, if the witness was believed, that there was a large number of forgeries outstanding, a fact material to be shown in order to establish the alleged confederacy between Platt, Warner, and Smith. And we think also that it was relevant to the main issue. Questions of this character involving as they do a great variety of transactions with accompanying circumstances, often require the testimony to take a wide range. This was evidently one of those cases, and the testimony was properly admitted."

The conclusion to be reached from a careful review of the authorities is well stated by Mr. Wharton, in his work on Evidence, in these words : "To sustain the introduction of such collateral facts, they must be in some way capable * * * of being brought into a common system with that under trial." 1 Whart. on Evid., sec. 29. To illustrate he states the case of *Griffiths v. Payne, supra*, bringing out clearly the reason on which the decision of that case was based, *i. e.*, that there was no distinct proof that the bill in question had ever formed part of the collection of the forged bills.

In the present case such reason for the exclusion of the evidence does not exist. Here the plaintiff had a collection of nine notes, all purporting to have been executed by the defendants, and all payable to the plaintiff. The plaintiff brought suit on them all on the same day before the same justice of the peace. In the present suit on three of the notes, the defendants

first introduced evidence tending to show that the notes in suit were forgeries, and then showed the facts just stated as to the other notes and the notes in suit, constituting a collection in the possession of the plaintiff at one time; and then offered to prove that all of said other notes, except one, were also forgeries, and that that one had been fraudulently raised from forty to one hundred and forty dollars. The evidence thus offered in connection with the evidence already introduced, in my opinion, was relevant and pertinent to the issue. In connection with the other evidence it tended to show a general scheme on the part of the plaintiff to forge the signatures of the defendants to promissory notes, and that their signatures to the notes in suit had been forged, as a part of such scheme. In other words, the evidence taken together brought the collateral facts "into a common system with that under trial." "When a mass of action is examined in a block, it is allowable to assume, as a presumption of fact, that if a part of it is tainted in a particular way, the rest is so tainted." 1 Whart. on Evid., sec. 39.

Judgment reversed and cause remanded. All concur.