DAVID R. WALKER, Respondent, v. PHŒNIX INSURANCE COMPANY, Brooklyn, New York, Appellant.

### Kansas City Court of Appeals, May 6, 1895.

1. **Trial Practice**: PLEADING: MAKE DEFINITE. A replication denied each and every allegation of the answer, except as hereinafter admitted. *Held,* a motion to make more definite should have been sustained.

2. **Insurance**: EVIDENCE: DEFENSE: HUSBAND AND WIFE. A policy of insurance covers a loss occasioned by the wife of the insured; and her acts and declarations at and during the fire are not evidence against the husband, unless done by his consent, nor are they part of the *res gestæ.*

3. ———: ———: COLLATERAL FACTS. Evidence may be given as to collateral facts if connected with the main fact so as to be material thereto. And, in this case, evidence as to the want of authority on the part of the agent to issue policies on farm property without taking an application therefor is *held* admissible.

4. **Trial Practice**: EVIDENCE: CHARACTER OF WITNESS. Whenever the character of a witness for truth is attacked in any way, it is competent for the party calling him to give general evidence to support his good character.

5. **Insurance**: PROOF OF LOSS: MAGISTRATE'S CERTIFICATE. Where the nearest magistrate to the fire arbitrarily refuses without good cause to investigate the loss and to certify the result, the insured. may go to the next magistrate for such certificate. And, an instruction on this subject set out in the opinion, is approved.

6. **Insurance**: MINERAL SPRINGS JUSTICE OF THE PEACE: DE FACTO OFFICER. The office of justice at a mineral springs town, as established by the act of 1881, was abolished by the act of 1887 and ceased to exist. And one filling such office thereafter was not a justice *de facto*. And an insured party seeking a certificate of loss did not have to apply to such justice though he was acting as a justice and was nearest to the loss.

7. ———: FALSE WARRANTY: INSTRUCTION. A warranty is part of the contract and the matter of it must be such as it is represented to be. And an instruction submitting the question of that effect on the validity of the policy, is modified, in the opinion.

8. ————: VALUED POLICY: REAL VALUE: INSTRUCTION.  While under the statute the amount of recovery in case of a total loss of a building is fixed by the amount in the policy, yet the real value of the building may become a material question in evidence, as the statute permits the insurer to pay the cash or restore the building.  And, again, the false representation or swearing in the application or proofs by its terms avoid the policy; and an instruction is suggested that no sworn statement made in the proof of loss, as to the value of the building, should have the effect to defeat a recovery, unless it was false and willfully made for the purpose of deceiving.

9. ————: TRIAL PRACTICE: INSTRUCTION.  An instruction containing the statutory rule of damages in case of total loss is rendered faulty by ignoring the defenses interposed.

*Appeal from the Sullivan Circuit Court.*—HON. W. W. RUCKER, Judge.

REVERSED AND REMANDED.

*J. W. Peery* and *J. L. McCullough* for appellant.

(1) The court erred in overruling defendant's motion to make the reply definite and certain.  *Long v. Long*, 79 Mo. 649;  Bliss on Code Pleading, sec. 331.  (2) The evidence offered as to the acts and declarations of plaintiff's wife after she went to the building at his instance and as his agent, was admissible.  Especially was this true of what was said and done by her while the building was burning.  Everything said or done by any actor, or by any bystander or spectator, while the fact which was the subject of inquiry was transpiring, was competent as a part of the *res gestæ*.  1 Greenleaf on Evidence, sec. 108, and note, sec. 102;  1 Wharton on Evidence, secs. 259–266;  *Bank v. Wheat*, 58 Mo. App. 11;  *Harriman v. Stowe*, 57 Mo. 93;  *Brownell v. Railroad*, 47 Mo. 239;  *Entwhistle v. Feightner*, 60 Mo. 214;  *Stoeckman v. Railroad*, 15 Mo. App. 515;  *State v. Elkins*, 101 Mo. 344;  *State v. Castor*, 93 Mo. 242;  *Henry v. Sneed*, 99 Mo.

407; *State v. Gabriel*, 88 Mo. 639; *State v. Testerman*, 68 Mo. 408; *State v. Sanders*, 76 Mo. 35; *Updyke v. Wheeler*, 37 Mo. App. 680; *Folks v. Burnett*, 47 Mo. App. 564; *Harper v. Morse*, 114 Mo. 317; *Ins. Co. v. Moseley*, 8 Wall. 397; *State v. Williams*, 106 Mo. 170; *State v. Young*, 119 Mo. 495; *State v. Moore*, 117 Mo. 317. But for another and a different reason, the evidence tending to show that plaintiff's wife burned the building was competent. The law presumes that she did it by coercion of the husband. Schouler, Hus. and Wife, secs. 134, 135; Schouler, Dom. Rel., secs. 74, 75; *Dailey v. Houston*, 58 Mo. 361; *Alexander v. Lydeck,* 80 Mo. 341; *Flesh v. Lindsay*, 115 Mo. 1; *Wirt v. Dinan*, 44 Mo. App. 583. And this rule has not been affected by the married woman's acts. *McElfish v. Keekendall*, 36 Iowa, 224; *Ferguson v. Brooks*, 67 Me. 251; *Knowing v. Morley*, 57 Barb. (N. Y.) 479; *McQueen v. Feelyham*, 27 Tex. 463; *Coughlin v. Haeussler*, 50 Mo. 126; *Crabtree v. Vanhoozer*, 53 Mo. App. 410; *State v. Earnest*, 70 Mo. 420; *Budd v. Hoffheimer*, 52 Mo. 297; *Haynes v. Christian*, 30 Mo. App. 198. (3) The court also erred in refusing to permit the defendant to prove the good reputation of E. Miller for truth and veracity. His character was continuously and insidiously attacked throughout the trial, and especially by the course of the cross-examination. *Miller v. Railroad*, 5 Mo. App. 481, and cases cited; 1 Greenleaf on Evidence, sec. 462. (4) The plaintiff did not comply with the terms of his policy by producing the certificate of the magistrate nearest the place of the fire, certifying that he had without fraud sustained the loss. *Worsely v. Wood*, 6 T. Rep. 710; *Oldman v. Bewicke*, 2 H. Bl. 577; *Routledge v. Burrell*, 1 H. Bl. 254; *Ins. Co. v. Lawrence*, 2 Peters, 25; s. c., 10 Pet. 507; *Noonan v. Ins. Co.*, 21 Mo. 81; *Ledbetter v.*

*Ins. Co.*, 13 Me. 265; s. c., 29 Am. Dec. 505; *Johnson v. Ins. Co.*, 112 Mass. 49; s. c., 17 Am. Rep. 65; *Cayon v. Ins. Co.*, 68 Wis. 570; *Williams v. Ins. Co.,* 39 Fed. Rep. 167; *Hanna v. Ins. Co.*, 36 Mo. App. 538; *Lane v. Ins. Co.*, 52 N. W. Rep. 649 (Sup. Ct. Minn.); *Kelley v. Sun Fire Office*, 141 Pa. St. 10; (Overruling *Ins. Co. v. Block*, 109 Pa. St. 535, and *Shoe Co. v. Ins. Co.*, 138 Pa. St. 73.) See note to this case 23 Am. St. Rep. 258. 2 May on Ins., sec. 466; Wood on Ins., sec. 416 [2 Ed.], sec. 442; Ostrander on Ins., 404–412; *Hudson v. McCartney*, 33 Wis. 331; *Nelson v. Donahue*, 50 Mo. 943; *Campbell v. Ins. Co.,* 10 Allen, 218; *Inman v. Ins. Co.*, 12 Wend. 452; *Dawes v. Ins. Co.*, 7 Cowen (N. Y.), 465; *Daniels v. Ins. Co.*, 50 Conn. 551; *Gilligan v. Ins. Co.*, 20 Hun, 93 (affirmed 87 N. Y. 626); *Ins. Co. v. Tyler*, 16 Wend. 385; *Turley v. Ins. Co.*, 25 Wend. 374; *Schultz v. Ins. Co.*, 57 Mo. loc. cit. 336; *Roumage v. Ins. Co.*, 13 N. J. L. 110; *Ins. Co. v. Pherson*, 5 Ind. 417; *Comel v. Ins. Co.*, 15 Martin, 223; *Kerr v. Ins. Co.,* 32 U. C. Q. B. 569; *Morrow v. Ins. Co.*, 39 U. C. Q. B. 441; *Mason v. Ins. Co.*, 23 U. C. C. P. 37; *O'Conner v. Ins. Co.*, 3 Rus. & C., Nova Sc., 119; *Logan v. Ins. Co.*, 3 Rus. & C., Nova Sc., 338; *Herkins v. Ins. Co.*, 3 Rus. & C., Nova Sc., 176; *Moody v. Ins. Co.*, Thompson, Nova Sc., 175; *Campbell v. Ins. Co.*, 1 McArthur, 246; *Scott v. Ins. Co.*, 1 Stuart, 154; *Mason v. Harvey*, 8 Exch. 819; *Langle v. Ins. Co.*, 17 U. C. Q. B. 524; *Ins. Co. v. Bank*, 62 Fed. Rep. 222; *Hubbard v. Ins. Co.*, 57 Mo. App. 1. (5) A statement in an application, which is by the terms of the policy made a warranty, must be literally true. It is like a condition precedent. It was error to charge that they need be only substantially true. *Maddox v. Ins. Co.*, 56 Mo. App. 343; *Milling Co. v. Ins. Co.*, 25 Mo. App. 259; *Briggs v. Ins. Co.*, 65 Mich. 52 (31 N. W. Rep.

616); *Roberts v. Ins. Co.*, 26 Mo. App. 92; *Barnard v. Ins. Co.*, 27 Mo. App. 23; *Frochly v. Ins. Co.*, 32 Mo. App. 310; *Crook v. Ins. Co.*, 38 Mo. App. 586; *Bobbitt v. Ins. Co.*, 8 Am. Rep. 494; *Ins. Co. v. Gilbert*, 27 Mich. 429; May on Ins. [3 Ed. 1891], sec. 188; *Holloway v. Ins. Co.*, 48 Mo. App. 1; *Lama v. Ins. Co.*, 51 Mo. App. 447; *Fisher v. Ins. Co.*, 33 Fed. Rep. 544; *Baker v. Ins. Co.*, 24 N. E. Rep. 1041; *Shoup v. Ins. Co.*, 51 Mo. App. 286; *Maddox v. Ins. Co.*, 56 Mo. App. 343; *Loehner v. Ins. Co.*, 17 Mo. 247; *More v. Ins. Co.*, 68 Mo. 127; *Ins. Co. v. Barnett*, 73 Mo. 364; *Digsby v. Ins. Co.*, 3 Mo. App. 603; *Nichols v. Jones*, 32 Mo. App. 657; *Martinowsky v. Hannibal*, 35 Mo. App. 70; *Price v. Railroad*, 77 Mo. 508; *Stone v. Hunt*, 94 Mo. 475. (6) If the plaintiff willfully swore falsely in his proofs of loss, as to the value of the house, it avoids the policy. *Browne v. Ins. Co.*, 68 Mo. 133; *Shutter v. Ins. Co.*, 62 Mo. 236; *Marion v. Ins. Co.*, 35 Mo. 148; *Rothschild v. Ins. Co.*, 62 Mo. 356. (7) J. D. Antrobus was clearly a *de facto* officer, whose certificate would have been legal and binding upon the defendant. *State v. Carroll*, 9 Am. Rep. 409; *State v. Sutton*, 3 Mo. App. 388; *Fleming v. Mulhall*, 9 Mo. App. 71; *Adams v. Lindell*, 5 Mo. App. 197; s. c., 72 Mo. 198; *State v. Finn*, 4 Mo. App. 347; *State v. McCann*, 11 Mo. App. 596; *Hildredth v. McIntyre*, 19 Am. Dec. 61; *Wilcox v. Smith*, 21 Am. Dec. 213; *People v. Stanton*, 21 Am. Rep. 497; *Priest v. Lawrence*, 16 Mo. App. 409; *Simpson v. McGonegal*, 52 Mo. App. 540; *Hamilton v. Pitcher*, 53 Mo. 335; *State ex rel. v. Miller*, 48 Mo. 251; *Perkins v. Fielding*, 119 Mo. 49.

*Hyde & Orton* and *Harber & Knight* for respondent.

(1) There was no error in overruling defendant's motion to make the reply definite and certain. The

issues raised by it were clear and certain. (2) The evidence of declarations of Mrs. Walker, wife of plaintiff, were properly excluded. There was not one word of evidence that he was in any way privy to the act, nor that she was his agent. 1 Greenleaf on Evidence, sec. 185; 9 Am. and Eng. Encyclopedia of Law, 824; *Hussey v. Elrod*, 36 Am. Dec. 420. Before the declaration of one conspirator can be put in evidence against another alleged conspirator, the fact of such conspiracy must be established. *State v. Ross*, 29 Mo. 51. This is elementary. 1 Greenleaf on Evidence [13 Ed.], sec. 341, pp. 400, 401, *supra*. (3) The defendant had no right to prove the character of its witness, Miller. (4) The statements of Pendleton made to Mr. Walker when applied to for a certificate, were properly admitted. (5) Pendleton, a justice of the peace nearest to the place of the fire, arbitrarily refused to make the investigation. He did not know the assured, because the assured lived some sixty miles from that neighborhood and could not certify to the facts required by the policy, and he refused to make the necessary investigation. The seventh instruction given for plaintiff is the law of this state. *Noonan v. Ins. Co.*, 21 Mo. 89; *Leigh v. Ins. Co.*, 37 Mo. App. 548; *McNally v. Ins. Co.*, 33 N. E. Rep. (N. Y.) 479. (6) The plaintiff being justified in not procuring Pendleton's certificate, he had a right to secure the certificate of the next nearest officer authorized, and, in doing so, he was not required to go to J. D. Antrobus, who was not a magistrate. He was utterly without a shadow of authority. Not only had his term of office expired in 1888 (Session Acts, 1881, 154), but his office had been by law abolished. Session Acts, 1887, page 206. The town of Salome never had five hundred population and was not entitled to a justice of the peace. 57 Mo. App. 78; 27 Mo. App. 477; R. S., secs. 6104, 6105. (7) To render the policy void

by reason of false swearing in proofs of loss, the plaintiff must have willfully made false statements as to some matter material, and this could not be predicated: *First.* Upon a mere matter of opinion as to the value of the property. *Morran v. Ins. Co.*, 35 Mo. 148; *Dogge v. Ins. Co.*, 5 N. W. Rep. 889, 49 Wis. 501, and cases cited. *Second.* Nor upon a statement as to the value of the property, for the reason that the value was immaterial; that having been conclusively fixed by the policy, under the provisions of section 6009, of the Revised Statutes of 1879, in force when this policy was issued. *Ins. Co. v. Leslie*, 24 N. E. Rep. (Ohio) 1072; *Riley v. Ins. Co.*, 43 Wis. 449; *Thompson v. Ins. Co.*, 43 Wis. 459; *Bammessel v. Ins. Co.*, 43 Wis. 463; *Cayon v. Ins. Co.*, 68 Wis. 510, 32 N. W. Rep. 540; *Gaslight Co. v. Ins. Co.*, 71 Wis. 454, 37 N. W. Rep. 819. (8) The statement in proofs of loss, to avoid the policy, must be on a material matter and willfully false with intent to defraud. *Marion v. Ins. Co.*, 35 Mo. 148; *Schulter v. Ins. Co.*, 62 Mo. 236; 2 May on Insurance [3 Ed.], sec. 477; 2 Wood on Insurance, sec. 455, p. 1004. (9) The contention of the defendant that the statement in the proofs of loss as to the value of the building were material because the defendant had a right to rebuild, is not tenable.

SMITH, P. J.—This is an action on a fire insurance policy. There was a trial and judgment for plaintiff, from which defendant has appealed.

The replication to the answer was a denial "of each and every allegation therein contained, except as hereinafter admitted."

The defendant filed a motion to require the plaintiff to make his reply definite and certain by stating what allegations of the answer were admitted and what denied. The court overruled this motion. The remarks

made by Mr. Commissioner Phillips in *Long v. Long*, 79 Mo. 644, are quite apposite here.   The trial court should have sustained the motion, so as to have compelled the plaintiff to make certain what he denied and what he admitted.

It appears that the building covered by the policy sued on was situate some sixty miles from the place of plaintiff's residence.   It was in an unfinished state and had been originally designed for a hotel, being located near a mineral spring.   It had been unoccupied, but just previous to the issue of the policy, plaintiff had put a tenant in possession of it.   Five days before the fire occurred, the plaintiff's wife—an old, infirm and diseased woman—arrived at the building, bringing with her some bedding, a hogshead and a jug of coal oil, saying that she had come to clean up the building, as they intended to sell.   She occupied it in conjunction with the plaintiff's tenant and the latter's boy.   On the day the fire took place, there was no one at the building except plaintiff's wife and the tenant's boy.

The court, on objection of plaintiff, refused to permit defendant to read to the jury the deposition of witness Andrew Barber, to the effect that during the progress of the fire, the plaintiff's wife told a witness present that "she had not set the house on fire and that if she had, she would not cry;" and also the following part of that of the witness Eloymon Barber:   "*Q.* Who made any suggestions to Mrs. Walker about putting the fire out?   *A.* Andrew Barber.

"*Q.* Who else was present with her when he made the suggestion about putting the fire out?   *A.* There were several there; I don't know whether they heard it or not.

"*Q.* What did Andrew Barber say to her about putting the fire out?   *A.* He got a little water that was in the pail in the house and went up stairs, and

there was a window right over the shed roof. He began to throw a little on the fire and it began to die down. It wasn't a very big blaze. He said, 'Grandma, you hand up the water and I will put it out.' She said for him not to, for he would get hurt, and for him to come down. He kept throwing a little water on it and she kept telling him to come down, until it died very near out, and he came down. After a while it began to blaze up again. 'Now,' she said, 'I told you that you couldn't put it out,' and began to cry. No one else that I heard made any suggestion about putting the fire out. Q. State whether she made any other objections than those you have just stated, as to putting the fire out? A. Yes, she made two or three objections every time it was named by Andrew. Andrew was laughing and cutting up about it."

Also that part of that of witness Catherine Wilson, in which it was stated, that, "Andrew Barber wanted to try to put it out. Mrs. Walker told him not to go in there, to let it alone, he might get hurt; that she didn't want anybody hurt on her account." Also that of Elbert Bartlett, the tenant's boy, wherein it was stated: "Jasper Wilson and I first discovered the fire. We began hollering fire as soon as we saw it. Mrs. Walker didn't say anything to us about going for my father. She asked us to come and help carry her things out of the house. She had her things all piled up ready to be moved. When we saw the fire we ran into the house and she had her things piled up all together. A 'few minutes before we saw the fire, I saw Mrs. Walker taking some dry weeds and grass into the house." There was other testimony of like character which was by the court excluded.

One of the defenses pleaded in the answer was that plaintiff's wife, by his connivance, procurement and consent, willfully burned the house for the purpose of

defrauding defendant. The question thus presented is, did the court err in rejecting the defendant's offers of evidence.

*Insurance Co. v. Smith*, 6 L. R. Q. B. Div. 561, was where during the currency of the policy, the wife of the assured burnt the property insured. In the course of the opinion by WILLIAMS, J., it was said: "The substantial contention on the part of the insurance company is, that the loss in question having been caused by the willful act of the wife of the assured, although acting without the privity of the husband, is not a loss covered or insured against by the policy. * * As the question has been freely and ably argued before me, and as the parties have expressed a desire to elicit an opinion upon the point, I have no hesitation in saying that it appears to me to be upon principle perfectly clear and free from doubt that such loss would be covered by the ordinary policy against loss caused by fire; under such policy, the company would be liable for every loss caused by fire, unless the fire itself were caused and procured by the willful act of the assured himself, or someone acting with his privity and consent. In order to escape from responsibility for such a loss, the company ought to introduce into their policy an express exception."

*Plensky v. Insurance Co.*, 32 Fed. Rep. 47, was where the defense interposed in a suit on the policy that the property was burned with the assent and connivance of the insured. At the trial an instruction was held not to be erroneous, which declared that though there was evidence sufficient to be submitted to the jury, that the husband had burned the property, it was not material in the case, as there was no evidence to connect the wife—the plaintiff—with it, to show that it was done with her assent or connivance and that plaintiff would not be affected by the fraudulent burn-

ing of the property by her husband. Whether he set fire before he left the building, or returned there after having gone to his house was immaterial, without some evidence connecting her with the arson. There can be, says the court, no question of the legal proposition that the wife is not chargeable with the fraudulent conduct of her husband, notwithstanding he may have been her agent in the management of the property and the conduct of her business. And the assertion of a like principle is to be found in the analogous case of *Perry v. Insurance Co.*, 11 Fed. Rep. 482, and also in Riddle on Insurance, sec. 442.

There is not a semblance of evidence tending to prove that plaintiff connived at, or assented to, the burning of his house by his wife, or that he was in privity with her in what she said or did in respect to the same. The acts and declarations of the plaintiff's wife, which defendant sought to introduce in evidence, being without the privity of the husband, were clearly inadmissible. Nor do we think such rejected evidence was admissible as part of the *res gestæ*. In 1 Rice on Evidence, 369, it is stated that hearsay is often admitted as evidence as part of the *res gestæ*, as when it is necessary to inquire into the nature of a particular act and the intention of the person who did the act, proof of what the person said at the time of doing it is admissible for the purpose of showing its true character. But, since the wife was, so far as the evidence discloses, acting without the privity of the plaintiff, her intention in that regard was not a necessary subject of inquiry—it was immaterial. Whether she burned the building or not, could not affect the policy rights of the plaintiff. The wife did not stand in such relation to the plaintiff, at the time of the fire, as to render her acts and declarations admissible on any principle of *res gestæ*. Her acts and declarations stood on precisely

the same footing as those of any of the other persons who were present at the fire and were without the privity of the plaintiff. Her acts and declarations derived no additional probative force from the mere fact that she was the wife of the plaintiff.

The defendant further objects that the court erred in refusing to permit it to show by its agent, Miller, and his son, that, by the terms of the former's agency, he was forbidden to issue policies on farm property, without taking an application therefor. It seems to us that the proffered testimony was corroborative of that which tended to prove that the questions propounded in the application were answered by the plaintiff before such application was signed and delivered to the agent. The fact which the rejected testimony tended to establish was a proper one for the consideration of the jury, and should have been admitted. The rule is that evidence may be given as to collateral facts, if they are so connected with the main fact as to be material in the inquiry as to the main fact; or, if they become material by being so connected with the main fact, by the testimony in the case. *Haynes v. Christian*, 30 Mo. App. 198; *Budd v. Hoffheimer*, 52 Mo. 297.

The defendant further objects that the court erred in refusing to allow it to introduce proof of the good reputation, for truth and veracity, of its agent, Miller. His character in this respect was attacked by plaintiff, not by direct evidence, but by the character of cross-examination and by evidence of statements and reports, etc., made by him out of court, different from those sworn to on the witness stand. "It is now well settled," says Judge REDFIELD, in *Paine v. Tilden*, 20 Vt. 554, "that, whenever the character of a witness for truth is attacked in any way, it is competent for the party calling him to give general evidence in support of the good character of the witness. And we do not

think it important whether the character of the witness is attacked by showing that he has given contradictory accounts of the matter out of court and different from that sworn to, or by cross-examination, or by general evidence of want of character for truth.'' And to like effect are the following cases: *Miller v. Railroad,* 5 Mo. App. 47; *State v. Row,* 12 Vt. 93; *Isler v. Dewing,* 71 N. C. 14. Accordingly it must be ruled that the court erred in rejecting defendant's offer of general evidence of the good character of its agent, Miller, for truth.

The defendant further objects that the court erred in permitting the plaintiff to introduce in evidence, as part of his proof of loss, the certificate of the notary, Bram. The answer pleaded as a defense a stipulation in the policy which provided, in the event of loss under the policy, that, as part of the proofs of loss, the plaintiff should produce a certificate, under the hand and seal of a magistrate or notary public, nearest to the place of the fire, not concerned in the loss as a creditor or otherwise, nor related to the assured; stating that he has examined the circumstances attending the loss and knew the character and circumstances of the assured, and that he verily believed that the assured had, without fraud, sustained loss to the amount which the magistrate or notary should certify. It was further alleged in the answer that the said certificate of the said notary, Bram, contained the false statement that he was the nearest magistrate or notary to the place of the fire, when, in truth, he knew that he was not and that there were two other magistrates residing nearer the place of the fire—W. A. Pendleton and J. D. Antrobus.

The replication admitted that Pendleton was a magistrate, residing nearer the place of the fire than Bram, but alleged as an excuse for the nonproduction

of the .certificate of the former, that, although so requested, he had refused to investigate the loss and the matters about which he was required by the policy to certify, and had, without good cause, capriciously refused to issue said certificate. If Pendleton was not disqualified, as was the fact, as shown by the evidence, and refused to act at all on the matter, then the notary, Bram, was embraced in the stipulation. *Noonan v. Ins. Co.*, 21 Mo. 89. The court properly permitted the plaintiff to introduce in evidence the certificate of Bram. It was a question for the jury to determine from all the evidence, under appropriate instructions, whether Pendleton did capriciously refuse to give the certificate required by the policy. If he did, the plaintiff ought, and if he did not, he ought not, to recover.

The court told the jury: "That it was incumbent on plaintiff to furnish the certificate required by the policy, but if the jury find from the evidence that such officer residing nearest the place of the fire was one Pendleton, a justice of the peace, and the plaintiff applied to him for such certificate, and the said officer did not know the facts in relation to the matter about which he was required to certify, and he arbitrarily and capriciously refused to make the necessary investigation as to such matters when requested so to do, if he was so requested, and the plaintiff used diligence to procure and induce him to make such investigation and to make such certificate, and he arbitrarily and capriciously refused to make such investigation and certificate without any reasonable cause or reason for such refusal; then if, as a matter of fact, plaintiff had, without fraud, sustained said loss, he had a right to apply to, and procure the certificate of, the nearest notary public to said fire, if there was no other magistrate, except said Pendleton, nearer than the nearest

notary public, and if G. F. Bram was such nearest notary public, then plaintiff had a right, under the terms of said policy, to apply to and procure the certificate of said notary public, G. F. Bram, instead of the certificate of said Pendleton." No objection is perceived to the rule declared to the jury by this instruction. The question whether Bram's certificate was within the stipulation was properly submitted to the jury by this instruction. *Leigh v. Ins. Co.*, 37 Mo. App. 348; *McNally v. Ins. Co.*, 33 N. Y. 479.

But it is further contended by defendant that J. D. Antrobus, who, it is conceded, was appointed a justice of the peace of the town of Silvain—a curative spring town—under the act of 1881 (Session Acts, 1881, p. 154), was acting as such justice at the time of the fire, and for some time thereafter. It is also conceded that he resided nearer the place of the fire than did Bram. But it is suggested that plaintiff was not bound to procure the certificate of Antrobus, because his office, as a mineral spring town justice, had been abolished by the act of 1887 (Session Acts, 1887, p. 206), so that he was not a justice at the time Bram made his certificate. After the repealing act of 1887 went into effect, the justice's office, to which Atrobus had been appointed, ceased to exist. He was not thereafter a justice *de facto*, for the reason the law did not recognize such an office. There was no longer any legal office for him to fill. *Ex parte Babe Snyder*, 64 Mo. 58; *State v. O'Bryan*, 68 Mo. 153; *Ayres v. Latimer*, 57 Mo. App. 79; *Jester v. Spurgeon*, 27 Mo. App. 477.

It may be that, if Antrobus, after the abolition of his office, still continued to perform its duties, and that while so doing, the plaintiff, in good faith, had obtained from him the certificate required by the policy, we would, in such case, under the ruling made in *Perkins v. Fulding*, 119 Mo. 49, hold it sufficient; but

certainly we can not, under the existing circumstances, hold that the production of his certificate was a condition precedent to the plaintiff's right of recovery. The doctrine that the acts of an officer *de facto* are valid, extends only to prevent mischief to such as confide in officers who are acting without right. We can not, therefore, discover that the plaintiff was in any way bound to produce the certificate of Antrobus, in order to comply with any requirement of the policy. It follows that the court did not err in giving the defendant's ninth instruction.

Defendant objects that the plaintiff's second instruction, which declared that before the jury could find the policy void, on account of alleged false statements contained in the plaintiff's application, they must believe that some statement therein made was not substantially true, etc. We should be much better satisfied with this instruction, had it, in plain terms, told the jury that the statements contained in the application, if made by plaintiff, were warranties, and, unless they believed that some one or more of them were untrue in point of fact, the validity of the policy was not affected by said statement. A warranty is a part of the contract, and the matter of it must be such as it is represented to be, otherwise there can be no recovery on the policy. It is like a condition precedent. *Holloway v. Ins. Co.*, 48 Mo. App. 1; *Maddox v. Ins. Co.*, 56 Mo. App. 343; *Loehner v. Ins. Co.*, 17 Mo. 247; *Ins. Co. v. Barnett*, 73 Mo. 364; *Mers. v. Ins. Co.*, 68 Mo. 127. Since the judgment must be reversed and the cause remanded, we suggest that, in the event of another trial, plaintiff's second instruction be so amended as to meet the views we have just expressed.

The defendant further objects that the plaintiff's fourth instruction, which, amongst other things, told the jury that no statement of the plaintiff, or certificate

of Bram in the proof of loss, as to the value of the building burned, would defeat plaintiff's right of recovery. The policy sued on in this case was issued while section 6009, Revised Statutes, 1879, was yet in force. Under that section, in all cases when the property insured was wholly destroyed, without the criminal fault of the insured, the amount of the insurance written in a policy was required to be taken *conclusively* as the value of the property, when insured, and the true amount of the loss, and the measure of the damages when the property was destroyed. In all cases, therefore, of total destruction of the insured property, not within the exception mentioned in the statute itself, the amount of the insurance written in the policy is to be conclusively taken as the value of the property when insured and when destroyed.

But, while the amount of the insurance is made by the statute, conclusive as to the value of the building destroyed, so far as the amount of the damages which the insured shall recover, may not the value of the building still be open to inquiry for another purpose? The sworn statements of the insured, in his proof of loss, are to be distinguished from those in the preliminary statements which constitute warranties. The statute gives the insurer the option to pay the amount named in the policy in cash, or to restore the building to its original condition, etc. The statement as to the value given in the proof of loss may be false, yet the insurer is not necessarily bound to rely on it. He may investigate the matter for himself, so as to intelligently exercise his option. The policy provides that any fraud or false swearing by the assured, touching any matter relating to the insurance, or to the subject thereof, whether before or after loss, should forfeit all claims on the insurer and should be a complete bar to any recovery for loss under the policy.

Since the insurer may pay the amount of the policy or restore the property, the inquiry as to its value becomes quite material. It may be the property can be restored for half the amount of the insurance, and if the insurer is informed of that fact, he would exercise his option to restore the property rather than pay the amount of the insurance. If there is a large difference between the value of the building, or the cost of its restoration, and the amount of the insurance, it would be greatly to the advantage of the insured, and to the disadvantage of the insurer, that the latter pay the former the amount of the insurance. Ordinarily, no one could know the value of the building destroyed better than the insured and the magistrate who issues the certificate. The clause in the policy in respect to proofs of loss was, no doubt, intended to require the insured to give the insurer reliable, rather than misleading, information as to the value of the buildings, at the time of the loss. It was not intended by the policy that a mistake, or unintentional error, or misstatement of an immaterial matter in the affidavit in the proof of loss, should avoid the policy. But the false statement that should avoid the policy must be willfully made in respect to a material matter, and with the purpose to deceive the insurer. *Marion v. Ins. Co.*, 35 Mo. 148; *Brown v. Ins. Co.*, 68 Mo. 133; *Shelton v. Ins. Co.*, 62 Mo. 236; *Rothschild v. Ins. Co.*, 62 Mo. 350. We think, therefore, that the instruction, under consideration, should have stated that no sworn statement made by plaintiff, in his proof of loss, as to the value of the building, should have the effect to defeat his right of recovery on the policy, unless such statement was false and willfully made, with the purpose of deceiving the defendant.

The defendant further objects that the plaintiff's fifth instruction is erroneous and misleading. If this

instruction had told the jury that, if they found all the issues for the plaintiff, then the statutory rule for the admeasurement of the damages in it outlined, would have been well enough, but given on the issue stated in the plaintiff's fifth instruction, it was improper. It ignored the defenses interposed by the defendant. No serious objection is perceived to plaintiff's other instructions. The defendant's eighth instruction should have been given. Its enunciation, it will be seen, is in substantial accord with the view of the law previously expressed by us in noticing the plaintiff's fourth instruction. No other error is discovered in the action of the court in the giving or refusal of instructions.

It results that the judgment will be reversed and the cause remanded. All concur.